NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

TRENTON TIMOTHY JACKSON, JR., *Appellant*.

No. 1 CA-CR 18-0275
FILED 2-7-2019

---

Appeal from the Superior Court in Maricopa County
No. CR2017-102628-001
The Honorable Jay R. Adleman, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jeffrey L. Force
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Jon W. Thompson joined.

---

**W I N T H R O P**, Judge:

¶1 Trenton Timothy Jackson, Jr. ("Jackson") appeals his convictions and sentences for three counts of aggravated assault. Jackson's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), stating he has searched the record for error but could not identify any "arguable question of law that is not frivolous." Jackson's counsel therefore requests that we review the record for fundamental error. *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999) (explaining that, after receiving an "*Anders* brief," this Court reviews the entire record for reversible error). This Court allowed Jackson to file a supplemental brief *in propria persona*, but he did not do so.

¶2 We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A) (2018).[1] Finding no reversible error, we affirm Jackson's convictions and sentences.

**FACTS AND PROCEDURAL HISTORY**[2]

¶3 On the evening of January 16, 2017, Z.H., his wife T.H., and their infant son traveled to downtown Phoenix to watch a basketball game. The family drove to a "park and ride" lot near the airport because they planned to ride the light rail to the basketball arena. While they waited on the light rail platform, Jackson approached the family. He did not speak, but he began to walk in circles around them. Eventually, Z.H. spoke to Jackson, and Jackson pulled out a knife in his right hand. Z.H. stood up and directed his wife to run away with their son. After T.H. ran away, she

---

[1] Absent material revision after the date of an alleged offense, we cite a statute's current version.

[2] "We view the evidence in the light most favorable to sustaining the verdicts and resolve all inferences against appellant." *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998) (internal citation omitted).

called the police. Z.H. then attempted to back away from Jackson, but Jackson continued to follow him the length of the light rail platform. People walking by noticed the encounter and began yelling at Jackson. Jackson briefly turned away to confront the onlookers and Z.H. ran away. By the time Jackson attempted to pursue Z.H. again, Z.H. had already found his wife and got into their car.

¶4        The police arrived shortly after in response to T.H.'s 9-1-1 call. The police approached Jackson with their guns drawn, but Jackson refused to cooperate with their instruction. After multiple requests for Jackson to remove his hands from his pockets, an officer tased Jackson.

¶5        Jackson was arrested and taken into custody. When questioned by the arresting officer, he refused to answer any questions. The State filed a complaint against Jackson on January 19, 2017, and a grand jury charged Jackson by indictment on January 25, 2017. The charges included two counts of aggravated assault as a class two dangerous felony (Counts 1 and 2) and two counts of aggravated assault as a class three dangerous felony (Counts 3 and 4). The State subsequently filed a supervening indictment, charging Jackson with the same crimes. The State also alleged several aggravating circumstances, including that the offenses caused physical, emotional, or financial harm to the victims and that Jackson was previously convicted of a felony within ten years of the alleged offense.[3]

¶6        A Rule 11 competency hearing was held on May 23, 2017. After reviewing reports based on two medical examinations, the court found Jackson competent to stand trial. In addition, the parties stipulated that Jackson's competency was "medication dependent," and the court ordered Jackson to follow a prescribed treatment plan for the duration of the trial.

¶7        After the State presented its case at trial, both Jackson and his mother expressed to the court their concern that he did not fully understand what was happening in the trial proceedings. The court rejected their concerns, stating that nothing had changed since Jackson was determined mentally competent and his attempt to raise issues of competency after the State rested appeared "very self-serving." Ultimately, Jackson decided to testify as part of his defense.

¶8        Jackson testified that he was carrying the knife for protection because his mother recently kicked him out of her house. Jackson also

---

[3]        The State also alleged three historical prior felonies.

explained that he was upset because his money was recently stolen. He stated he took methamphetamines a few days earlier, and he believed he was still under the influence of the drugs when he encountered Z.H. and his family. Throughout his testimony Jackson maintained that he did not intend to hurt anyone with the knife.

¶9 The jury found Jackson guilty as to Counts 3 and 4 and returned a hung jury as to Counts 1 and 2. The court then held an aggravation phase, and the jury found aggravating circumstances for both Counts 3 and 4.

¶10 Prior to sentencing, Jackson entered a plea deal for Counts 1 and 2 instead of proceeding to a second trial. As part of the deal, Jackson pled guilty to Count 1 and the State dismissed the charges for Count 2.

¶11 At sentencing, the court considered mitigating and aggravating factors. Jackson submitted a letter to the court requesting admittance to a mental health facility rather than a jail sentence, but the court explained it did not have the authority to do so because he was already convicted. The court did consider Jackson's mental health issues as a mitigating factor along with his willingness to sign the plea deal. The court found the presumptive sentences appropriate and sentenced Jackson as follows: twelve years' imprisonment (Count 1); eleven and one quarter years' imprisonment (Count 3); eleven and one quarter years' imprisonment (Count 4). The court ordered the imprisonment terms to run concurrently, and the court retained jurisdiction over restitution. Because Jackson was on probation when he committed the offenses, the court revoked his probation and sentenced him to three and a half additional years' imprisonment pursuant to A.R.S. § 13-708(E).[4]

## ANALYSIS

¶12 We have reviewed the entire record for reversible error and find none. *See Leon*, 104 Ariz. at 300. The record reflects the proceedings were conducted in compliance with Jackson's constitutional and statutory rights and the Arizona Rules of Criminal Procedure. He was represented by counsel at all stages of the proceedings against him and was present at all critical stages. Although Jackson raised the issue of competency multiple times during the trial, the court acted within its discretion when it denied a second Rule 11 evaluation. *State v. Amaya-Ruiz*, 166 Ariz. 152, 162

---

[4] The three and a half years' imprisonment runs consecutively with Counts 1, 3, and 4.

(1990) ("The trial court has broad discretion in determining whether reasonable grounds exist to order a competency hearing and its decision will not be reversed absent a manifest abuse of discretion.") (internal citation omitted).

¶13 The State presented evidence sufficient to allow the jury to convict Jackson, and the jury was properly comprised of twelve members. The court properly instructed the jury on the elements of the charges, the State's burden of proof, and the necessity of a unanimous verdict. The jury returned a unanimous verdict, which was confirmed by juror polling. The court ultimately imposed legal sentences for the crimes of which Jackson was convicted.

¶14 After the filing of this decision, defense counsel shall inform Jackson of the status of his appeal and of his future options. Counsel has no further obligations related to this appeal unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Jackson shall have thirty days from the date of this decision to proceed, if he desires, with a motion for reconsideration or petition for review.

## CONCLUSION

¶15 Jackson's convictions and sentences are affirmed.

